**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASEY FICKARDT, | No. 2:16-CV-2596-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 4 and 7), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 10 and 16).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

2

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 23, 2013.  See CAR 18.[1]  In the application, plaintiff claims disability began on October 1, 2012.  See id.  Plaintiff alleges disability due to limitations caused by Crohn's disease, an unresolved perianal fistula, and mental impairments.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 6, 2015, before Administrative Law Judge (ALJ) David G. Buell.  In a June 12, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): Crohn's disease, residuals of perianal fistula, anemia, mood disorder, and anxiety disorder;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: sedentary work; the claimant requires a work environment with typical access to toileting facilities; the claimant is limited to simple, routine, repetitive work; she can respond to routine changes, but is not able to exercise significant judgment on the job;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> See id. at 20-32.

After the Appeals Council declined review on September 1, 2016, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]    Citations are the to the Certified Administrative Record (CAR) lodged on March 27, 2017 (Doc. 9).

**III. DISCUSSION**

In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions of treating physicians, Drs. Light, Hassid, and Pham; and (2) the ALJ failed to properly evaluate plaintiff's credibility. Plaintiff also argues that, based on these errors, the ALJ further erred by relying on testimony in response to hypothetical questions posed to the vocational expert that did not accurately reflect plaintiff's residual functional capacity.

**A.    Evaluation of the Medical Opinions**

At Step 4, the ALJ considered the medical opinion evidence in determining her residual functional capacity. See CAR 26-30. The ALJ gave "partial weight" to the opinions of consultative non-examining physicians, Drs. DeSouza and H. Pham, see id. at 26-27, and treating physician, Dr. Elizabeth Pham, see id. at 29, "little weight" to the opinions of treating physicians, Drs. Light, Diggs, and Hassid, see id. at 27-29, and Nurse Practitioner Karen Grumtrup, see id. at 29. Plaintiff argues the ALJ erred with respect to treating physicians, Drs. Light, Hassid, and Pham. According to plaintiff:

> . . .[T]he opinions from treating physicians, Drs. Light, Hassid, and Pham, are all supported by appropriate medical findings and uncontradicted by other substantial evidence in the record. Therefore, their assessments of Ms. Fickardt's physical limitations should have been given controlling weight. See 20 C.F.R. § 404.1527(c)(2) (Commissioner must give controlling weight to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record"); SSR 96-2p (1996 WL 374188) (a supported opinion from a treating source that is not contradicted by other substantial evidence must be adopted).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the

5

opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  <u>See</u> <u>id.</u> at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.

1.    <u>Dr. Light</u>

As to Dr. Light, the ALJ stated:

. . . [I]n a medical source statement submitted in October of 2013, Dr. Light opined that the claimant is incapable of low stress jobs and that pain, fatigue, and other symptoms would constantly interfere with the claimant's attention and concentration (Exhibit 9F, p. 5).  Next, he opined that the claimant could sit for zero to one hour in an eight-hour workday

6

and could stand/walk for zero to one hour in an eight-hour workday (Exhibit 9F, p. 5). Dr. Light then opined that the claimant could occasionally lift and carry between zero to five pounds (Exhibit 9F, p, 6). He also opined that the claimant would need ready access to a restroom and she would be away from her workstation about ten minutes at a time (Exhibit 9F, p. 7). Dr. Light then sent a letter dated February of 2014, in which he opined that the claimant cannot perform any prolonged standing or sitting due to the pain and location of her fistula (Exhibit 11F). He also opined that the claimant cannot walk for more than twenty or thirty feet without pain and cannot lift, push, or pull whatsoever (Exhibit 11F, p. 2). . . .

The undersigned gives little weight to Dr. Light's opinions. . . . [R]egarding the medical source statement he submitted in October of 2013, it was noted in a treatment record that he filled out the form over the telephone (Exhibit 10F, p. 6). Also, in this medical source statement, Dr. Light reported that the claimant is in constant pain and her pain rates as a six out of ten (Exhibit 9F, p. 4). However, because the form was filled out over the telephone, Dr. Light did not have the chance to observe the claimant and he therefore had no way of estimating the claimant's level of pain. Also, the claimant presented in "no acute distress" at several appointments and she reported dancing and going to the gym (Exhibits 5F, p. 11; 17F, pp. 15-15; 27F, pp. 53-54). This evidence is inconsistent with the claimant's alleged level of pain. Next, regarding the letter Dr. Light sent February of 2014, his opinion is inconsistent with his findings of a claimant at a subsequent appointment. Specifically, at a subsequent appointment in February of 2014, the claimant had only a small, tender mass in the perineum and there was minimal erythema and no induration (Exhibit 12F, p. 4). She also had good bowel sounds (Exhibit 12F, p. 4). This evidence reflects minimal limitations and does not support Dr. Light's ultimate conclusion that the claimant is disabled. Based on this explanation, the undersigned gives little weight to Dr. Light's opinion.

CAR 27.

Plaintiff's discussion regarding the ALJ's analysis of Dr. Light's opinions consists of the following single statement repeated twice in her brief: "Dr. Light based his opinions on evidence of chronic diarrhea, loss of appetite, anal fissure, blood in her stool, malaise, fatigue, nausea, pain, low grade fever, chronic interstitial cystitis, and arthralgias (Tr. 390)."

Plaintiff's statement fails to identify any error in the ALJ's analysis. Nonetheless, in the interest of justice the court has considered whether the ALJ's evaluation of Dr. Light's opinions is supported by proper legal analysis and substantial evidence. The court finds that it is not.

/ / /

/ / /

With respect to Dr. Light's October 2013 assessment, the ALJ improperly observed Dr. Light's opinions are not supported by the doctor's own observations because they were rendered over the telephone and not in person. Just because the doctor dictated his conclusions over the phone does not mean they are unsupported by his observations. To the contrary, the record reflects extensive treatment provided by Dr. Light.

The court also has concerns regarding the ALJ's evaluation of Dr. Light's later opinions, rendered in February 2015. See CAR 406-12 (Exhibits 11F and 12F). In a February 3, 2014, letter, Dr. Light opined plaintiff is unable to engage in work activities due to her unresolved fistula. See id. at 406 (Exhibit 11F). In particular, Dr. Light concluded plaintiff cannot sit or stand more than 30 minutes, walk more than 20 or 30 feet, or do any lifting, pushing, or pulling. See CAR 406 (Exhibit 11F). The doctor's letter outlines plaintiff's treatment regarding the fistula in detail. See id.

The ALJ rejected Dr. Light's February 3, 2014, opinions because he found them inconsistent with the doctor's own clinical observations at a follow-up appointment on February 15, 2014. See id. at 27 (referencing Exhibit 12F). In his report of the February 15, 2014, follow-up, Dr. Light noted plaintiff was "battling a perianal fistula for many months now going back about 2 years; this fistula . . . is being treated aggressively. . . ." Id. at 408 (Exhibit 12F). On examination, Dr. Light observed a "tender mass in the perineum." Id. at 410. The doctor also noted plaintiff has a "rectal fistula which periodically flares." Id. at 409. The ALJ does not explain how this evidence is inconsistent with Dr. Light's February 3, 2014, opinions. To the contrary, the February 15, 2014, observations appear to support the doctor's opinions regarding limitations resulting from plaintiff's fistula. As such, the court finds the February 15, 2014, follow-up notes insufficient to support the ALJ's evaluation of Dr. Light's February 3, 2014, opinions.

Because the ALJ's evaluation of Dr. Light's opinions is not based on substantial evidence, the matter will be remanded for further consideration by the Commissioner.

/ / /

/ / /

1    2.    Dr. Hassid

2    As to Dr. Hassid, the ALJ stated:

3    Furthermore, the undersigned considered the opinion of Eric Hassid, M.D.
     (Exhibit 22F). He opined that the claimant could perform a job in a seated
4    position for less than one hour and could perform a job in a standing
     and/or walking position for less than one hour (Exhibit 22F, p. 4). Dr.
5    Hassid then opined that it is medically necessary for the claimant to avoid
     continuous sitting in an eight-hour workday and would need to get up
6    from a seated position every ten minutes (Exhibit 22F, p. 4). Additionally,
     he opined that the claimant could occasionally lift and carry between zero
7    to five pounds (Exhibit 22F, p. 4). He then opined that the claimant has
     moderate manipulative limitations and she would need to take
8    unscheduled breaks to rest at unpredictable intervals during an eight-hour
     workday (Exhibit 22F, p. 5). Also, Dr. Hassid opined that the claimant
9    could be absent from work more than three times per month (Exhibit 22F,
     p. 6).
10
     The undersigned gives little weight to Dr. Hassid's opinion. . . . [H]is
11   opinion is inconsistent with the claimant's reported activities of daily
     living. Specifically, the claimant reported that she is physically active and
12   goes to the gym and dances.

13   CAR 28-29.

14   Again, plaintiff's discussion regarding Dr. Hassid consists of a single statement: "Dr. Hassid cited

15   to laboratory blood testing, in addition to multiple previous scans, x-rays, procedures, and tests in

16   support of his opinion (Tr. 565)." Despite plaintiff's failure to identify any error, the court has

17   reviewed the ALJ's analysis and finds it is not supported by substantial evidence.

18           The ALJ rejected Dr. Hassid's opinions because he found them inconsistent with

19   plaintiff's activities, which include going to the gym and ballroom dancing. See id. at 29. As the

20   ALJ noted, however, plaintiff reported she goes to the gym for thirty minutes. See id. at 24

21   (referencing Exhibit 27F, p. 50). Further, the ALJ did not discuss the lengths of time spent

22   ballroom dancing. As such, these activities do not necessarily undermine Dr. Hassid's opinions.

23           Because the ALJ does not explain how limited-duration gym visits undermine Dr.

24   Hassid's opinions, and because the ALJ did not discuss any evidence relating to the duration of

25   ballroom dancing, the court finds this evidence insufficient to support the ALJ's conclusion

26   regarding Dr. Hassid. The matter will be remanded for further evaluation by the Commissioner.

27   / / /

28   / / /

9

3. <u>Dr. Pham</u>

As to Dr. Pham, the ALJ stated:

The undersigned also considered the opinion of Elizabeth Pham, M.D. (Exhibit 24F). She opined that the claimant's pain, fatigue, and other symptoms would constantly interfere with attention and concentration (Exhibit 24F, p. 5). Also, she opined that the claimant is incapable of even low stress jobs (Exhibit 24F, p. 5). Dr. Pham then opined that the claimant could sit for zero to one hour and stand/walk for zero to one hour in an eight-hour workday (Exhibit 24F, p. 5). Next, she opined that the claimant could occasionally lift and carry between five to ten pounds (Exhibit 24F, p. 6). Finally, she opined that the claimant should not be working at any capacity due to functional disability (Exhibit 24F, p. 7). The undersigned gives partial weight to Dr. Pham's opinion. First, a finding of disabled is a finding that is reserved to the commissioner (20 CFR 404.1527(e)). Also, her opinion is inconsistent with the evidence in the record. Specifically, Dr. Pham opined that the claimant's pain, fatigue, and other symptoms interfere with attention and concentration constantly (Exhibit 24F, p. 5). However, Dr. Pham did not note in her treatment records that the claimant had any deficits in concentration (Exhibit 18F, pp. 9-12). Moreover, her opinion that the claimant is limited to sitting, standing, and walking for one hour per day is inconsistent with the evidence in the record. Specifically, the claimant sat comfortably through the hearing and the claimant reported being physically active by going to the gym and dancing (Exhibits 5F, p. 11; 17F, p. 15; 27F, p. 53). Finally, Dr. Pham did not even examine the claimant on the date that she filled out the medical source statement (Exhibit 24F, p. 8). Based on this explanation, the undersigned gives partial weight to Dr. Pham's opinion.

CAR 29.

According to plaintiff:

The ALJ also erred by rejecting the opinions from treating physician Dr. Pham in part because he felt they were inconsistent with treatment records that did not record limitations in Ms. Fickardt's ability to concentrate (Tr. 29). As the Ninth Circuit stated in *Orn*, 495 F.3d at 634, ("[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel not to provide evidence for disability determinations." Medical charts are not ordinarily kept in anticipation of litigation, but for the purpose of recording a patient's symptoms, medical findings, diagnoses, and treatment recommendations, as is the case here. It would be highly unusual for Dr. Pham to record work-related limitations in the treatment notes, including a limitation in concentration. *See also Leckenby v. Astrue*, 487 F.3d 626, 633 n.7 (8th Cir. 2007) (noting that "it does not seem unusual that a physician would see no need to make specific treatment notes on an unemployed patient's need for [specific limitations] during a routine medical examination"); *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) ("this Court has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work").

10

The ALJ rejected the doctor's opinion because: "Dr. Pham did not even examine the claimant on the date that she filled out the medical source statement (Exhibit 24F, p. 8)." CAR 29. He also rejected it because he found the opinion is "inconsistent with the evidence in the record." Id. Specifically, the ALJ noted: "the claimant sat comfortably through the hearing and the claimant reported being physically active by going to the gym and by dancing (Exhibits 5F, p. 11; 17F, p. 15; 27F, p. 53)." Id.

The court finds the first reason insufficient because, though Dr. Pham did not examine plaintiff on the exact date she completed her source statement, the record reflects that Dr. Pham treated plaintiff from September 2014 through February 2015. See id. at 573 (Exhibit 24F). Additionally, the court finds the second reason is insufficient because, as with the ALJ's analysis of the opinions offered by Drs. Light and Hassid, the ALJ does not explain how Dr. Pham's opinions are inconsistent with "evidence in the record," specifically evidence that plaintiff goes to the gym for short durations and dances for undiscussed durations. The ALJ's reference to plaintiff's one-time ability to sit through a short-duration administrative hearing also is unavailing.

**B.    Credibility Assessment**

At Step 4, the ALJ assessed plaintiff's credibility to determine her residual functional capacity. See id. at 23-26. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the

Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling

pain not credible, the Social Security Act does not require that disability claimants be utterly

incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

12

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ sated:

The claimant alleges that she is disabled due to Crohn's disease, perianal fistula, and anemia (Exhibit 1E, p. 3). The claimant testified that she has diarrhea every day. She further testified that she is in the bathroom about ten times on a good day and fifteen to twenty times on a bad day. Moreover, the claimant testified that she takes sitz baths four to five times on a bad day and three to four times on a normal day, for twenty to forty-five minutes at a time. Additionally, the claimant testified that she gets infusions and injections to treat her fatigue. Specifically, she gets B12 shots and has infusions of different nutrients. She further testified that the infusions last about three hours. Finally, the claimant reported that she cannot sit longer than ten minutes and needs assistance with lifting.

* * *

In terms of the claimant's alleged limitations, the undersigned finds that the claimant is not entirely credible. First, the claimant provided inconsistent statements. The claimant testified that she has diarrhea on a bad day about fifteen to twenty times, for about fifteen to forty-five minutes at a time. However, she reported at an appointment in December of 2012 that she generally has two bowel movements a day (Exhibit 3F, p. 3). In sum, this inconsistent statement diminishes the persuasiveness of the claimant's statements about her sever impairments and limitations. Furthermore, the claimant showed no evidence of pain or discomfort while testifying at the hearing. While the hearing was of limited duration and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the

hearing is given some slight weight in reaching the conclusion regarding the claimant's credibility and residual functional capacity.

Additionally, the record reflects that the claimant has not sought consistent mental health treatment from her treatment provider Stephen Diggs, Ph.D. . . . The claimant testified that she only sees Dr. Diggs on an as needed basis, and she further testified that she saw Dr. Diggs about three times in 2014. However, the most recent treatment note from Dr. Diggs is dated August of 2013. In sum, the lack of consistent treatment for the claimant's mental impairments reflects that these impairments are not as severe as alleged. Next, the claimant's reported activities of daily living are inconsistent with having disabling impairments. First, the claimant reported that she exercises three to four times per week, in which she goes to the gym for thirty minutes (Exhibit 27F, p. 50). Also, there were several references in treatment notes about the claimant dancing (Exhibits 3F, p. 3; 5F, p. 10; 27F, p. 196). Additionally, the claimant reported that she goes shopping and drives a car (Exhibit 4E, p. 3). Also, the claimant reported that she dusts, feeds her cat, sweeps, and makes the bed (Exhibit 4E, p. 3). Finally, her fiancé reported that the claimant has no problems with personal care (Exhibit 11E, p. 3). In sum, the claimant's reported activities of daily living are inconsistent with having disabling impairments.

The objective medical evidence also reflects that the claimant is not as limited as alleged. First, regarding the claimant's Crohn's disease, residuals of a perianal fistula, and anemia, at an appointment in October of 2012, it was noted that the claimant was not taking medication for her Crohn's disease, with the claimant preferring a natural approach in treating this impairment (Exhibit 2F, p. 4). The claimant had a normal physical examination (Exhibit 2F, p. 5). Notably, the claimant had a normal examination of her abdomen, with it being non-tender and the claimant having normal bowel sounds (Exhibit 2F, p. 5). Next, at an appointment in December of 2012, the claimant reported that she generally had two bowl [sic] movements per day and that she did not suffer from constipation (Exhibit 3F, p. 3). Upon examination, the claimant's abdomen was only mildly distended and she had only mild tenderness in the right lower quadrant on palpation (Exhibit 3F, p. 4). She otherwise had a normal physical examination (Exhibit 3F, pp. 4-5).

Additionally, at an appointment in June of 2013, it was noted that the claimant exercised by ballroom dancing and going to the gym (Exhibit 5F, p. 10). The claimant presented in no apparent distress (Exhibit 5F, p. 11). Upon examination, the claimant had a normal examination of her abdomen (Exhibit 5F, p. 11). Besides having a limited range of motion and tenderness in her neck, the claimant otherwise had a normal physical examination (Exhibit 5F, p. 11). Next, at an appointment in October of 2013, it was noted that the claimant's condition was improving, but she still was unable to work due to fatigue and constant abdominal pain (Exhibit 8F, p. 3). At this appointment, disability forms were filled out over the phone by Mark Light, M.D., (Exhibit 8F, p. 3).

Also, at an appointment in February of 2014, the claimant complained of pain in her right lower quadrant (Exhibit 12F, p. 2). The claimant was noted as being "under developed" and she had tenderness in her right lower quadrant (Exhibit 12F, pp. 3-4). However, she had good bowel

sounds and no peritoneal signs (Exhibit 12F, p. 4). Also, the claimant had only a small soft abscess with minimal erythema and no induration superior to the rectum (Exhibit 12F, p. 4). Next, at an appointment in May of 2014, it was noted that the claimant goes to the gym for thirty minutes three to four times per week (Exhibit 17F, p. 15). The claimant presented in no acute distress and her physical condition was unchanged (Exhibit 17F, p. 16). At a subsequent appointment in May of 2014, the claimant reported that she still had a fistula, but she was keeping it under control (Exhibit 20F, p. 3). Next, at an appointment in June of 2014, it was noted that the claimant found a doctor in St. Louis who treated her with intensity parasitology and dental protocols, with it being noted that the claimant was doing somewhat better with that physician (Exhibit 25F, p. 2). It was also noted that the claimant did remarkably well with NAET therapy (Exhibit 25F, p. 2). Additionally, it was noted that the claimant's fistula had pus production on only an occasional basis (Exhibit 25F, p. 2). The claimant reported that she was feeling much better than she did when she was feeling horrible, but she still knew that she was not well (Exhibit 25F, p. 2). Additionally, at an appointment in September of 2014, the claimant reported that she takes a sitz bath every two to three hours to keep her fistula draining (Exhibit 18F, p. 10). At this appointment, the claimant presented in no apparent distress (Exhibit 18F, p. 11).

Furthermore, at an appointment in November of 2014, the claimant reported that she was doing more dancing (Exhibit 27F, p. 196). It was also noted that she started IV treatments and B12 injections (Exhibit 27F, p. 196). Moreover, at an appointment in December of 2014, it was noted that the claimant's fistula was still present, but has improved over time (Exhibit 27F, p. 134). The claimant presented in no acute distress at this appointment (Exhibit 27F, p. 139). Finally, at an appointment in January of 2015, it was noted that the claimant did dancing and some yoga (Exhibit 27F, p. 51). It was again noted that the claimant goes to the gym three to four times per week for thirty minutes at a time (Exhibit 27F, p. 53). At this appointment, the claimant presented in no acute distress (Exhibit 27F, p. 54).

Regarding the claimant's mental impairments, there are limited treatment notes regarding her mood disorder and anxiety disorder. As noted above, the claimant testified that she sees Dr. Diggs on an as needed basis. Although the claimant testified that she saw Dr. Diggs about three times in 2014, the record reflects that she last saw Dr. Diggs in August of 2013 (Exhibit 14F, p. 2). Prior to that appointment, the claimant last saw Dr. Diggs in February of 2010, which is before the time period at issue in this case (Exhibit 14F, p. 4). The lack of consistent treatment for her mental impairments reflects that these impairments are not as severe as alleged. Besides the record containing limited treatment notes, the treatment notes of Dr. Diggs do not reflect that he performed any mental status examinations on the claimant. Therefore, it is difficult for the undersigned to ascertain what specific functional limitations the claimant has as a result of her mental impairments. With respect to the limited evidence in the file, at an appointment in December of 2012, the claimant did not report any symptoms regarding her mental impairments (Exhibit 5F, p. 7). Upon examination, she had a normal mood and affect and she was alert and oriented (Exhibit 5F, p. 7). Next, at an appointment in June of 2013, the claimant's orientation, affect, and judgment were intact (Exhibit 5F, p. 11). Furthermore, at an appointment in February of 2014, the claimant

15

presented in an anxious state, but it was noted that she was told that she may have cancer (Exhibit 12F, p. 2). Next, at an appointment in September of 2014, the claimant's short-term memory was intact, and she had normal mood and affect (Exhibit 18F, p. 12). She also had normal judgment and insight and there was no evidence of psychomotor agitation (Exhibit 18F, p. 12). In sum, the record reflects limited treatment regarding the claimant's mental impairments. With respect to the evidence that does address the claimant's mental impairments, it does not reflect any significant limitations.

CAR 23-26.

Plaintiff argues the ALJ erred by citing her activities of daily living and appearance at the hearing. Plaintiff also contends the ALJ erroneously cited a single office visit at which she reported no more than two bowel movements per day. According to plaintiff:

The ALJ's credibility determination is not supported by "clear and convincing" reasoning. As was already discussed above, the ALJ erred by relying heavily on Ms. Fickardt's appearance at the hearing to find her not disabled and placed undue weight on her sporadic activities of daily living. In addition, as already discussed, there are extensive clinical and diagnostic abnormalities in the record consistent with a finding of disability for Ms. Fickardt. Although the ALJ also noted that there are some normal findings in the medical records, he failed to explain how these are more relevant nor does he cite to any medical authority that calls the other findings into question based on this evidence. The ALJ could not cherry pick out normal findings to support his conclusions on Ms. Fickardt's disability. *Cf. Craig v. Astrue*, 269 Fed. Appx. 710, 712 (9th Cir. 2008) (holding that an ALJ must offer a reason for accepting only selected normal findings while disregarding other abnormalities in the record) citing *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non-disability"); *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984) ("Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper").

The ALJ also erred by concluding Ms. Fickardt's statements about the frequency of her diarrhea is not supported based on a single office visit when she stated she was having 1 to 2 bowel movements a day (Tr. 24). The fact that Ms. Fickardt may have had a brief period of improvement shortly after the onset of her disability when she was having only 1 to 2 bowel movements a day does not contradict her testimony that on bad days she has up to twenty episodes of diarrhea. The ALJ did not cite to any later evidence that documented sustained improvement in the frequency of Ms. Fickardt's diarrhea. Likewise, the ALJ's reference to a single note from October 2012, less than a month after Ms. Fickardt's disability began, indicating she was not taking medications, is not reflective of Plaintiff's extensive attempts to treat her Crohn's disease at later office visits. Therefore, none of the evidence cited by the ALJ reflects findings in the longitudinal medical record that conflict with Ms. Fickardt's allegations.

/ / /

16

As discussed above with respect to the ALJ's evaluation of the opinions rendered by Drs. Light, Hassid, and Pham, the finds the ALJ's reliance on plaintiff's daily activities is not supported by substantial evidence. The ALJ cites plaintiff's activities of going to the gym and ballroom dancing. These activities, however, do not necessarily undermine plaintiff's statements and testimony regarding limitations resulting from Crohn's disease and/or plaintiff's unresolved fistula because they do not show plaintiff can spend a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. Evidence that plaintiff goes to the gym for 30 minutes does not tend to undermine her allegations as to sitting, standing, and walking limitations, or need for access to a restroom for extended durations of time. Similarly, evidence relating to ballroom dancing is insufficient because the ALJ does not discuss the duration of this activity. Plaintiff's allegations are further supported by evidence plaintiff takes daily frequent sitz baths for 20-45 minutes at a time to relieve symptoms associated with her fistula. Finally, the court agrees with plaintiff a one-time observation of limited bowel movements does not necessarily establish a long-term history of limited bowel movements that would undermine plaintiff's credibility.[2]

Because the evidence of plaintiff's activities cited by the ALJ does not show plaintiff can engage in work activities for a substantial part of the day, the ALJ's adverse credibility finding is not based on substantial evidence. The matter will be remanded to the Commissioner for further evaluation of plaintiff's statements and testimony.

C.    **Vocational Finding**

At Step 5, the ALJ determined whether, given plaintiff's residual functional capacity, she can perform work that exists in the national economy. See CAR 31-32. The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform

---

[2]    To the contrary, plaintiff testified to a history of recurring problems in this regard. As the ALJ observed: "The claimant testified that she has diarrhea every day. She further testified that she is in the bathroom about ten times on a good day and fifteen to twenty times on a bad day." CAR 23.

treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[3] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

/ / /

/ / /

/ / /

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e). Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

18

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ stated:

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

(1) Food and Beverage Order Clerk (DOT [Dictionary of Occupational Titles] 209.567-014), which is classified as sedentary, unskilled work, and of which there are 32,000 positions in the state of California and 227,000 positions in the national economy;

(2) Charge Account Clerk (DOT 205.367-014), which is classified as sedentary, unskilled work, and of which there are 25,000 positions in the state of California and 215,000 positions in the national economy; and

(3) Final Assembler, Optical Goods (DOT 713.687-018), which is
classified as sedentary, unskilled work, and of which there are
21,000 positions in the national economy [sic] and 239,000
positions in the national economy.

Pursuant to SSR [Social Security Ruling] 00-4p, the undersigned has
determined that the vocational expert's testimony is consistent with the
information contained in the *Dictionary of Occupational titles* (DOT).

CAR 31-32.

Based on these findings, the ALJ concluded plaintiff can perform other work and, therefore, is not disabled.  See CAR 32.

The ALJ's hypothetical questions were based on his residual functional capacity finding which, for the reasons discussed above, the court finds flawed.  Specifically, the ALJ did not include limitations opined by Drs. Light, Hassid, and Pham, and which seem corroborated by plaintiff's statements and testimony.  The court is particularly concerned with what appear on the current record to be numerous serious work-related limitations related to plaintiff's Crohn's disease and/or unresolved fistula.

Because hypothetical questions were based on a flawed analysis at Step 4, the vocational expert's answers to those questions have no evidentiary value, See DeLorme, 924 F.2d at 850.  The ALJ, therefore, erred in relying on such testimony in concluding plaintiff can perform other work.[4]  The matter will be remanded for further vocational findings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

_____

[4]      The hearing transcript reflects the vocational expert offered alternative testimony based on a hypothetical question reflecting significant limitations related to numerous daily unscheduled bathroom breaks.  As to such an individual, the vocational expert testified "it's unlikely that she'd be able to perform the jobs."  CAR 72 (hearing testimony).  It is unclear whether the assumptions regarding bathroom breaks were based on symptoms related to Crohn's disease, unresolved fistula, or both.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for summary judgment (Doc. 10) is granted;

2.     Defendant's motion for summary judgment (Doc. 16) is denied;

3.     The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.     The Clerk of the Court is directed to enter judgment and close this file.

Dated:  September 26, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE